Baldwin, J.
In the case of The Literary Fund v. Dawsons, 10 Leigh 147. it was held by this court, that the devise contained in the 17th clause of the testator’s will was a valid executory devise, to take effect on the happening of the contingency therein contemplated; and the question now presented in the present suit is whether that contingency has happened ? The counsel for the appellees have supposed that some light on this subject may be obtained by recurring to the difficulties which the court thought, when it decided the former *417 cause, were removed by the construction it gave to the devise in question. Let us therefore briefly advert to the nature of those difficulties.
The testator was desirous of promoting the cause of education, by establishing three seminaries of learning in the counties of Albemarle and Nelson; and to this object he devoted the greater part of his estate, real and personal, by the 16th clause of bis will. But it appears he was apprehensive that this scheme of benevolence might fail, from the want of corporate powers for the preservation and administration of the fund thus created. In the event of such failure, he contemplated effectuating his general charitable design, the education of youth, by another plan, which would give him the agency of a then existing corporation, the president and directors of the literary fund. That plan was to constitute the estate devised a part of the literary fund, in such manner as to be used by the school commissioners for the counties of Albemarle and Nelson, in aid of the school fund allotted under the general law to those counties. But it seems he was aware that the laws constituting and regulating the literary fund, only contemplated its general resources, and would not be adequate to the administration of the specific charity he had in view. This obstacle, however, he believed could be removed by the power of the legislature, and he invoked its exercise in the following brief and comprehensive terms : “ An act of assembly for said object supposed can be obtained.”
The testator’s apprehensions in regard to his primary scheme were realized. It did fail at the moment of his death, from the want of corporate powers to carry it into effect. The seminaries of learning which he sought to endow by the provisions of the 16th clause were not in existence, and could only be created by an act of incorporation. A devise to or for them was therefore inoperative and void, upon the principles de *418 cided by the supreme court of the United, States in the case of The Baptist Association v. Hart's ex'ors, 4 Wheat. 1. and by this court in the case of Gallego's ex'ors v. The Attorney General, 3 Leigh 450. And the expedient ^acj noi; occurred to the testator of providing that an act of incorporation should be obtained, and that when obtained the seminaries so incorporated, or other persons in trust for them, should be the devisees of his estate. That such a devise, at least in the latter form, by way of trust, would be good according to the law of executory devises, there is no reason to doubt. It would be a devise to or for a person (whether natural or artificial is immaterial) not in esse- at the time of the testator’s death, but to come into existence in a reasonable time, so as not to violate the rules of policy inhibiting perpetuities. A limitation of that kind, engrafted •by way of condition on a common law conveyance, was held to be valid in Porter's case, 1 Rep. 24.; and in the case of Inglis v. The Trustees of the Sailor's Snug Harbour, 3 Pet. 99. the supreme court of the United States sustained a devise to certain official persons in the state of New York (whom by their official titles the testator appointed his executors) and their successors, upon trust to erect, manage and govern an asylum or marine hospital to be called The Sailor's Snug Harbour, for the support of aged,- decrepit and worn out sailors, and that if it could not be legally done according to his intention by them without an act of the legislature, they should apply as soon as possible for an act to incorporate them for that purpose: and the contingency of procuring an act of incorporation was held not to be too remote, inasmuch as by the intent of the testator it was to happen within a reasonable time.
• When the former cause between the present parties was before this court, it would seem that the counsel for the then plaintiffs, the testator’s heirs at law, based their argument against the validity of the devise in *419 question mainly upon the ground that it was a devise r ■, • ■ ii/to the literary fund, a corporation then incapable oí taking, and upon a contingency too remote. But the court held that the devise was not to the literary fund, but to the executors in trust, and that the contingency upon which the testator’s bounty was to take effect was not too remote. The devise to the executors, and the time for its effectual operation, were matters of construction ; and the difficulties removed by the construction adopted by the court were not inherent in the cause, but suggested by the ability of counsel, upon an erroneous construction of the devise insisted on by them, but repudiated by the court. The difficulties therefore were not in the mind of the court, but in the mind of the counsel, and can throw no light upon the present question.
The question now before the court is simply and exclusively whether the contingency has occurred upon which the trust for the literary fund, created by the w’ill and engrafted upon the devise to the executors, was to take effect. To determine this, we must of course look to the nature of the contingency; and that must depend altogether upon the intent of the testator. He had resolved to establish a charity, to be administered by the president and directors of the literary fund, through the agency of the school commissioners; and that resolution was fixed and final, so far as he and his representatives were concerned. But it required for its accomplishment the concurrence of another will, that of the legislature; and it required nothing more. It was wholly immaterial whether such concurrence was granted with or without solicitation, whether upon or without the application of the trustee or cestui que trust, whether at the suggestion of a member of the legislature or a stranger, whether as an act of grace and favour on the part of the government, or of public duty as the representative of a great public interest.
*420 There is nothing formal or technical in the devise in question. Important parts of it are not expressed in precise words, but to be inferred from the testator’s general intent. Thus, that the devise is to the executors has been inferred from the direction that the estate is to’be used by them in constituting it a part of the literary fund; which can only be done (in the appropriate mode of a surrender and conveyance of the property) by regarding the executors as clothed with the possession and title. So, that the devise is contingent upon the action of the legislature, we infer, because such action was contemplated by the testator, and indispensable to the success of his bounty. But we are not at liberty to infer a condition which is to defeat the whole purpose of the devise. The testator has not made his charity dependent upon the volition, or discretion, or fidelity of his executors. They had a plain and simple duty to perform, to wit, the tradition and conveyance of the property to the literary fund, so soon as that corporation should be authorized by the legislature to receive and appropriate it for the intended purpose. It was moreover the duty of the executors (not made so expressly, but by strong implication) to obtain, if they could, the concurrence of the legislature in the proposed endowment; a concurrence,' not with the will of the executors, but with the will of the testator. But to obtain if practicable, imports nothing more than the use of the lawful and proper means : and of what significancy are the means when the end has been accomplished ?
The desired act of assembly has been passed, and why should we now enquire whether it was passed with or without the "consent of the acting executor ? I readily admit that if it appeared clearly from the will, that the testator intended the establishment and endowment of his proposed charity should depend upon the consent of his executors, then we ought to treat such con *421 sent as an indispensable condition : but to my mind the manifest intent was directly contrary: and so the case is nothing more than the ordinary one of a refusal on the part of the trustee to execute the trust. In the language of the master of the rolls in Malim v. Keighley, 2 Ves. jun. 335. “ wherever any person gives property, and points out the object, the property, and the way in which it shall go, that does create a trust, unless he shews clearly that his desire expressed is to be con? trolled by the party, and that he shall have an option to defeat it.” In that view of the subject, I consider the cause free from all difficulty. If we could conceive that the consent of the acting executor was necessary to the passage of the act of the legislature, that consent being a matter of duty and not of discretion, a court of equity would have compelled him to give it previously. And now that the act has been passed, equity will compel his assent, by requiring him to surrender and convey the property.
It was, as I conceive, in no wise necessary that the testator should have contemplated the consent of his executors to the passage of the law, in order to relieve the contingency from the imputation of being too remote. Whether an executory devise tends to establish a perpetuity or not, depends upon the testator’s intention as to the time within which the contingency shall happen. It was never held that executory devises are to be governed by the rules of the common law as to common law conveyances: the only question is whether the contingency is to happen within a reasonable time or not, (Thellusson v. Woodford, 4 Ves. 327. 329.) and that is to be determined by the testator’s intent, upon a fair and liberal interpretation of the whole will. Inglis v. The Trustees of the Sailor's Snug Harbour, 3 Pet. 117. Chapman v. Brown, 3 Burr. 1634. Now I think it clear that it was the testator’s intention the legislature should act upon the subject in a reasonable time. If, when he *422 said “ an act of assembly for said object supposed can be obtained,” he had added the words “ in a reasonable time,” could any one doubt that the devise would have been defeated by an unreasonable delay in the passage of a law ? And yet how can it be supposed that his meaning was otherwise ? and “ to attain the intent,” shall'not “implication supply verbal omissions?” (Lord Mansfield in 3 Burr. 1634.) Do not the nature of the endowment, the investment of his estate in the literary fund, and the application of its accruing profits, exclude the idea that it might be locked up indefinitely in the hands of his executors, the very persons who were directed to invest it, and whose duty it was to solicit and endeavour to obtain the passage of the law ? It is evident that he contemplated the prompt action of the legislature ; and if so, can it be said that he did not intend it should occur within a reasonable time ? The acts to be performed by his executors were, it is true, official acts, but the performance of them was a personal duty, which could not, without malfeasance, be indefinitely delayed; which the testator must have expected them to perform forthwith, or as soon as practicable, and the performance of which necessarily involved the action of the legislature, or its refusal to act, within a reasonable time. What would be the precise limits of that reasonable time, it has never yet been, and never can be, necessary to enquire : it is enough that they could not transcend the period prescribed by the rules of executory limitations.
The views above stated are, it seems to me, in perfect accordance with the decree of this court, and the opinions of the judges, in the former cause between the same parties. All objections to the validity of the devise were then overruled : that founded on the supposed remoteness of the contingency was especially noticed and condemned, not because the contingency depended on the will of the executors, but on their duty; for there *423 is not the slightest intimation of any discretion on their part to defeat the devise. Judge Brooke’s opinion evidently rests upon the procurement or passage of the law within a reasonable time, and not upon the consent of the executors to its passage. Judge Tucker thought the case very much the same as that of Inglis v. The Trustees of the Sailor’s Snug Harbour, in which it will be seen that the executors were directed to apply to the legislature as soon as possible, and no one supposed for a moment that they had any discretion.
In a word, it would to my mind be very remarkable, if the testator had defeated his manifest and lawful purpose, by the lawful means which he adopted for its accomplishment: if he could be regarded as attempting a perpetuity, not in the legal sense of a corporate charity, but in the illegal sense of unreasonable delay in its creation: if his measures for the sure and swift execution of his scheme should have the effect of protracting it indefinitely ; and if he had confided to his executors the discretion of thwarting his unequivocal, decided, and clearly expressed intention.
As to the objections made to the details of the statute for the administration of the charity, they are matters which go not to the abrogation but the modification of the law, and should be addressed to the legislature. The provisions of the act are, however, in my opinion, strictly in conformity with those of the devise, for reasons which will be assigned by judge Allen in presenting his views of the case; which reasons, to my apprehension, are entirely satisfactory.
I think the decree ought to be reversed, and the cause remanded, with directions to compel the prompt and complete execution of the trust.
Allen, J.
The validity of the devise contained in the 17th clause of Martin Dawson’s will was considered by this court in the case reported in 10 Leigh 147. *424 The inferior court had declared that devise void. That , , . . , - decree was reversed, upon the ground that the devise was not to a corporation at that time incapable of taking and administering the estate in the mode prescribed by ^ wq]( tjUf j0 fog executors, in trust for the purpose of procuring the necessary act of assembly to constitute the estate a part of the literary fund. Holding the devise valid on this ground, the trust must be viewed as personal, confided to the persons named as executors, and not as an official trust. If an official trust had been intended, the contingency would have been too remote : the executors named, or their successors administering with the will annexed, would have been embraced, and there would have been no limit to the time within which the contingency might have happened. This the law forbids. To constitute a good executory devise, the contingency must happen within a reasonable time; and that has always been held to be a life or lives in being and 21 years afterwards. An act of the legislature has since been passed, on the application of the president and directors of the literary fund, empowering them to receive and hold the estate dedicated by the 17th clause of the- will. This application was not concurred in by the executors. They had petitioned for an act to carry into effect the intention of the testator as expressed in the 16th clause of the will; which petition, the preamble of the act recites, was rejected because of the decision that the said clause was void. In enacting the law which was actually passed, the legislature declared that the same was not to affect the rights of the heirs of the testator, in the event it should be decided that an application or petition from the executors was necessary to give effect to the claim of the president and directors of the literary fund. That question is now presented for decision: and in considering it, the will must be looked into for the purpose of ascertaining the intent of the testator.
*425 By the first clause of the will, an intention is manifested to dispose of his whole estate. Then follow many special bequests in favour of his relations and others, among which is included a provision for William W. Dawson one of the executors. Having made these particular dispositions, the testator by the 16th clause gives and devises the residue of his estate, real and personal, to be used by his executors in erecting three seminaries of learning. The 17th clause is as follows: “Should my executors fail to carry into effect said 16th devise for seminaries of learning, (which I hope and trust they will not,) then the real and personal estate devised for said objects, to be used by my executors in constituting a part of the literary fund of the state of Virginia, and two thirds of the interest on it to be used by the school commissioners for the county of Albemarle, in the same way the school fund allotted for the said county is used. The other one third of the interest on it to be appropriated and used by the school commissioners for the county of Nelson in the same way. And from time to time, as the legislature may think advisable, the principal may be used for like objects for the benefit of the said counties, in same proportions as the interest is directed to be used. An act of assembly for said object, supposed can be obtained.”
The general and leading intention to dedicate this estate to the purposes of education within the counties of Albemarle and Nelson is clearly manifested. As regarded his relations, he had made such provision for them before as he thought proper. His first and favourite scheme is developed in the 16th section. But he seems to have apprehended that difficulties might obstruct its execution. He looked to the possibility of its failure: and to provide for that contingency, and ensure an application of this estate to the leading intention of his will, he made the devise contained in the 17th clause. Is there any thing which indicates an in *426 tention to confide this matter to the discretion of his executors; to leave it to their judgment, whether this leading intention should or should not be carried into ° effect ? He contemplated no benefit to them individua]jy. for ^ relations he had provided; and he manifests a determination, in the first clause of the will, to dispose of the whole estate. No motive to be gathered from the will itself seems to have existed for permitting the disposition of the principal part of his estate to depend upon the discretion of his executors. To give to his will such a construction, would convert that which he' intended to be a complete and final disposition of his estate, into a mere request to his executors so to dispose of it if their judgment corresponded wdth his ; thus-substituting the will of his executors in the place of his own. The terms of the devise itself shew no intention to place the administration or control of the fund in the hands of the executors. They were to use it in constituting a part of the literary fund of the state. When constituted a part of that fund, their power over it ceased forever. For its future preservation and application to the purposes of his will, he trusted to the legislature. Whilst it remained unimpaired, the interest was to be applied by the school commissioners in .the same way the quota allotted by law to the two counties was used. With this application of the interest, the executors could not interfere. The testator knew that the duties of the school commissioners were prescribed by law, and that they were at all times, in respect to the administration of the school fund, subject to the control of the legislature. When therefore he directed that they should administer the interest of the fund created by his will in the same way the school fund was used, he clearly intended that it should be used by them in the mode prescribed by law, subject to such modifications as the legislature should from time to time adopt. The executors could not interfere *427 with the school commissioners in the administration of the public school fund ; and if not, neither could they exercise any supervision over this particular fund, for both were to be used in the same way. And so with respect to the principal: the testator, foreseeing that in the progress of time it might be expedient to apply the principal to the purposes of his will, confides that in express terms to the discretion of the legislature; thus making a complete and final disposition of the whole estate. With that disposition the executors could not interfere.
But it is said, the testator also contemplated an application to the legislature by his executors, to enable the president and directors of the literary fund to take and hold the estate for the purposes of his will. That he so intended must be conceded, for that intention was necessary (according to my interpretation of the decision of this court) to give validity to the devise. But was that the leading, governing intention of the testator ? To hold that it was, would be to bring us back to the question already discussed, and to say that the discretion of his executors was to be substituted in the place of his will. The testator no doubt had confidence in the good faith of his executors, and did not contemplate any failure on their part to perform the trust confided to them. He intended that they should apply for the act. An act was necessary to effectuate the end he had in view, and an application by his executors the means of obtaining it. But if they refuse to apply, and the end is attained in another mode, is the whole will to be defeated because this particular intent fails ? The mode by which it was his intention to dedicate his property to the purposes named, is not departed from. The act, no matter by whose application obtained, is the mode pointed out by him; and when it is passed, his intention is carried into effect. In Inglis v. The Trustees of the Sailor’s Snug Harbour, 3 Peters 116. it is *428 said, that “ for the purpose of carrying into effect the intention of the testator, any mode pointed out by him will be sanctioned, if consistent with the rules of law, although some may fail;” and (p. 117.) that “where the court can see a general intent consistent with the rules of law, it is to be carried into effect though the particular intent shall fail.” And see the authorities referred to in the last cited page. The respect due to a decision of that tribunal is in this instance somewhat impaired, as to the case itself, by the dissent of justice Story, with whom the chief justice concurred. But justice Story in his opinion does not deny the rule of law. Commenting on this part of the case, he observes, “ It is said that in a will, a particular may be made to yield to a more general intent. Certainly it may: but then the difficulty in the application of this rule to the present case is, that the argument insists upon a construction, which I cannot but deem an overthrow of the general, to subserve an intent not indicated. Because a testator has expressed an intent to bé carried into effect one way, which cannot consistently by law be so, and the court can see another way by which he might have carried it into effect if he had thought of it, it does not follow that the court can do that which the testator might have done, and newmodel the provisions of the will.” And again, in the same passage, he remarks— “ The general intention here appears to me to be, to create a perpetual trust, in certain trustees in succession, for’charity. And I can perceive no particular intent as distinguishable from that general intent. The perpetuity, the succession, and trusteeship are in his view equally substantial ingredients.”
In the case under consideration, the testator has not expressed an intent to be carried into effect one way, which cannot consistently by law be so. The mode designated to carry his intent into effect conflicts with no rule of law; and by holding the act valid which has *429 been passed, the general intent is executed, and not defeated. It is effected, not to subserve an intent which the testator never indicated, but substantially in the mode which he pointed out. He intended to create a perpetuity, but not in these trustees. No succession or supervision in them was contemplated. When the act should be obtained, and the executors should have constituted the estate a part of the literary fund, their powers were to terminate ; and the preservation and administration of the fund, so as to effectuate the testator’s leading intent, was entrusted to others. According to the argument of judge Story, this would be a case where the particular should yield to a more general intent.
It is supposed that the decision of this court in 10 Leigh 147. conflicts with this construction. The determination of the court is embodied in the decree. The only question before the court was as to the validity of the devise in the 17th clause. They held that the devise was not void. To that extent the decision, whether a correct construction of the will or not, (as to which I give no opinion,) furnishes the law of the case, and is binding on this court. The point now under consideration was not then before the court for adjudication. At that time the executors expressed their willingness to carry into effect the intention of their testator, if it could be done consistently with the rules of law. The idea of a refusal by them was not entertained, nor its effect upon the devise considered. In this condition of the case, and with reference to the question then presented (the validity of the devise), judge Tucker observed, that the law is clearly to be obtained by those to whom the trust is confided of constituting the estate a part of the literary fund. The opinions of a judge are always to be received in connexion with the point for decision. So treating this remark, it is perfectly correct, and yet does not bear upon the subject now under consideration. To give to the devise a construc *430 tion which would relieve it from the objection that the contingency might not happen within the reasonable time prescribed by law, and was therefore too remote, it was necessary to shew that the testator intended it to ^g performed within a reasonable time. That he did so intend, the judge argued, was clear, for he intended his executors to apply for the law: so intending, the contingency must happen in their lifetime; and therefore the devise was valid. But though such an intent was necessary to give validity to the devise, it is nowhere said or intimated by the judge, that if the executors should refuse to give effect to that intent, their refusal-should defeat a valid devise. That depended on distinct considerations; upon a view of the whole will, to ascertain the general, leading intent of the testator; the. mode designated to effectuate it;, and whether, though there should be a failure in one particular, that of an application by the executors for the necessary act, the general intent could not be still carried into effect, and substantially by the mode designated, notwithstanding the refusal of the executors to make such application.
- It seems to me that, in the event which has happened, it was competent for the president and directors of the literary fund to apply for the act, and that upon the passage of a law empowering them to take, hold and administer the estate in conformity with the terms of the will, the contingency has happened which gives effect to the devise, and the estate vests in the president and directors of the literary fund. The estate is to constitute a part of the literary fund : a perpetuity in the corporate body, if the legislature should think it advisable, is contemplated; and neither the heirs nor the executors have any beneficial interest. The legal title vested in the executors must be transferred to the corporation, charged with the execution of the trust; for this is essential to such an administration of the *431 fund as the testator clearly intended. The property cannot return to the heirs; for where lands are given to a corporation for charitable uses which the testator contemplates may last forever, the heir cannot have the lands back. 2 Story’s Equity 420. High. on Mortmain 336. 353.
It is said that the legislature has not so acted as to carry into effect the intentions of the testator; and several objections are made to the details of the act.
The 2d section charges the fund with all costs of suit, fees and expenses heretofore incurred or hereafter to be incurred by the president and directors of the literary fund, in sustaining said devise or managing the fund. The testator could not have supposed that these expenses were to be paid out of the public fund. By legal intendment, all expenses incurred in relation to this fund are properly chargeable on it. A decision of the court as to the validity of the devises contained in the 16th and 17th clauses of the will necessarily preceded the application for or the passage of the act. The costs incurred in the prosecution of the suit to determine this question grew out of the will itself, and are chargeable on the fund created by it.
The 3d section directs the payment of the interest to the school commissioners of the counties of Albemarle and Nelson, in the proportions designated by the testator, to be used by the school commissioners for the same objects and purposes, and under the same regulations, that the school fund for those counties from the public treasury may be used. At the date of the will, the quota allotted to each county was applied to the education of poor children; but when the act passed, the surplus income of the literary fund had been appropriated, and the school commissioners were empowered to apply their proportions of this surplus for the benefit of colleges or academies within their respective counties. It is said that the testator looked to the mode in which the fund was then used, and intended to de *432 vote his estate to the exclusive education of the poor: , l whereas under this law the school commissioners may, e^her directly or indirectly, appropriate it to colleges or academies. According to my construction of this cjauge 0f tjje wiH( though the testator adopts the phrase “ is used,” he is not to be understood as speaking of the time at which he prepared his will. The fund was to be paid to the school commissioners, to be used by them as they used the fund paid by the state. As they used the money received from the state according to the regulations prescribed by law; such use as they were authorized to make of the public fund would be a proper use of this fund: the testator confiding in the good faith of the legislature to use it according to his expressed intentions. But however this may be, the law does not justify the application of the interest to any other purpose than that to which the money allotted to the school commissioners was applied at the date of the will. The act of assembly passed March 22. 1836, (Acts of 1835-6, ch. 4. p. 7.) gives authority to the school commissioners of the respective counties to apply the quota of the surplus then distributed, to colleges and academies. Their discretion is limited to that surplus. But the interest from this fund is to be administered in the same way the general school fund is used.
The 4th section provides for the preservation of the fund, and directs that any unexpended balance for one year shall be converted into principal, so as to enlarge the fund. To this provision there would seem to be no valid objection. Surely, when the testator entrusted the whole administration of the fund to the agents selected, he must have intended to confer upon them the authority to preserve it from waste, if any portion was not required for the use of a particular year. It is argued, that if the fund is not required for any particular year, it should be transferred to the heir or next of kin. But if I am right in supposing that upon the happening *433 of the contingency the whole estate vests in the literary fund in perpetuity, the heirs and next of kin have no interest in the subject.
The 5th section provides, in the words of the will, that the principal may, if the legislature think it advisable, be appropriated to the uses of the school commissioners, or for like purposes. It is contended that under this provision an almost unlimited latitude is allowed to the legislature, and that in virtue of it they might apply this fund to any object they deemed analogous to the one to which the will had dedicated it. The answer to this is, that the law as passed directs the application in strict accordance with the intentions of the testator, and the power reserved is precisely that which the will conferred. We are not called upon to determine the extent of this authority. If a power over this estate is vested in the legislature as extensive as that which is exercised by the english chancery court under the statute of 43d Elizabeth of charitable uses, that would not render the act void. The power of the legislature to pass a general law similar to the 43d Elizabeth has never been questioned. No more can it be doubted, that whatever power is conferred by the words of the will in regard to this estate, may be exercised by the legislature, if by a special act they have sanctioned and legalized the devise.
Upon the whole, it seems to me that upon the passage of the act the contingency has happened which enables the president and directors of the literary fund to take, hold and administer the fund, and that the act is in strict conformity with the terms, provisions and conditions of the will; and consequently that the court below erred in dismissing the bill upon the demurrer of the heirs at law and the answer of the executor.